Abraham POLLARD

v.

A. BASKERVILLE.

Civ. A. No. 79–0626–R.

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 14, 1979.

Abraham Pollard, pro se.

Burnett Miller, III, Asst. Atty. Gen. of Virginia, Richmond, Va., for defendant.

## MEMORANDUM

WARRINER, District Judge.

Abraham Pollard, an inmate confined at the Deep Meadow Correctional Center, brings this *pro se* complaint pursuant to 42 U.S.C. § 1983 (1970). The jurisdiction of this Court is granted under 28 U.S.C. § 1343(3) (1970).

The plaintiff raises a number of claims arising from an incident which occurred on 15 May 1979. On that date, the defendant, Corporal Walker, charged the plaintiff with lying or giving false information to an employee. In his report to the Adjustment Committee, Corporal Walker provided the following description of the offense:

On May 15, 1979, Inmate A. Pollard made statements . . . that I [Walker] was bringing dope into the institution and that I was mad and shaking people down because an inmate had gotten me for $5.00.

The plaintiff was brought before the Adjustment Committee on 18 May 1979. He was found guilty of the charge and was given five days in isolation as a penalty. He in fact served time in isolation.

The plaintiff first seeks to challenge the facts relied upon by the Adjustment Committee in his case. However, the Court does not sit to review the factual findings of prison disciplinary panels. *Flythe v. Davis,* 407 F.Supp. 137 (E.D.Va.1976), and this claim will not be considered.

Next, the plaintiff contends that his procedural rights were not afforded him at the disciplinary hearing. This claim is certainly cognizable under Section 1983 in light of *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). Specifically, he states that particular witnesses in his behalf were not allowed to appear in person to present their testimony to the Adjustment Committee. He contends that he was told by the defendant, Sergeant Whitlow, at the time he was written up for the offense, that he could submit written statements from his witnesses but the witnesses could not appear in person. Support for this allegation is provided in the affida-

vit of an inmate, Irvin Doughty, filed on 12 September 1979. The plaintiff also alleges that Corporal P. L. Brown, Chairman of the Adjustment Committee Panel, infringed upon his procedural rights because she failed to permit his witnesses to appear in person.

The only explanation for the failure to permit the plaintiff's witnesses to appear is contained in the affidavit of the defendant, A. Baskerville, Superintendent of the Deep Meadow Correctional Center:

A few months ago, it was discovered that the designated Chairman of the Institutional Adjustment Committee had been unintentionally misinterpreting Division of Institutional Services Guideline 861. The Chairman, Corporal P. L. Brown, had been misinterpreting that portion of Guideline 861 pertaining to the presence of inmate witnesses at an Adjustment Committee hearing. It was thought that an inmate witness did not have to be present at the hearing to give his testimony to the Chairman; the written statement was considered by the Committee members and the inmate witnesses were not routinely present to give the testimony. It was thought that the presence of the statements was the same as the presence of the witness.

When inmate Abraham Pollard (# 114174) went before the Institutional Adjustment Committee to be heard for a Category B, Number 6 offense—lying or giving false information to an employee—it was not known at that time that Guideline 861 was being misinterpreted. The witnesses on inmate Pollard's behalf had submitted written statements of testimony to the Adjustment Committee Chairman, but the witnesses were not present during the hearing to actually give their testimonies. Even though the witness' statements were considered by the Adjustment Committee members during the deliberation stage, the Committee found inmate Pollard guilty as charged and sentenced him to five (5) days in isolation.

The procedural error was uncovered when Superintendent Baskerville considered a notice of appeal from the plaintiff on 6 June 1979. Superintendent Baskerville states that, upon learning that the Chairman had misinterpreted the guideline, he wrote a letter to the Regional Administrator and requested that the 15 May charge be removed from the plaintiff's record. Copies of portions of the plaintiff's prison file show that references to the Adjustment Committee action have been expunged.

In light of this information, the Court must consider whether the plaintiff is entitled to any of the forms of relief he has requested. To the extent that he sought expungement of the charge from his record, the claim is certainly moot. *See Inmates v. Owens,* 561 F.2d 560 (4th Cir. 1977). It further appears that review of the plaintiff's custody status will not be affected by this disciplinary charge so that relief cannot be granted on that basis. The plaintiff also seeks substantial monetary damages, however, and the action is not rendered moot as to this request for relief. *See Mawhinney v. Henderson,* 542 F.2d 1 (2d Cir. 1976).

The plaintiff's main complaint concerning Superintendent Baskerville's handling of this matter is that it took the Superintendent approximately thirteen days to respond to his appeal of the Adjustment Committee decision. This does not state a claim upon which relief can be granted. Although the plaintiff points out that Department of Corrections Guideline No. 861(H)(3) requires a more speedy response to an appeal, that provision does not so closely relate to or protect a constitutional right that violation of the guideline should permit the plaintiff to proceed under Section 1983. *See United States v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 1470–1473, 59 L.Ed.2d 733 (1979). The plaintiff further alleges that Superintendent Baskerville infringed upon his First Amendment rights because the Superintendent offered to expunge the offense if the plaintiff would apologize to the defendant Walker. This claim is frivolous and will not be considered. Superintendent Baskerville will therefore be dismissed as a party to this action.

The plaintiff also has failed to state a cause of action against Corporal O. J. Walker. His allegations may be construed as a claim of malicious prosecution with the intent to infringe upon the plaintiff's First Amendment right to free speech. However in *Morrison v. Jones,* 551 F.2d 939 (4th Cir. 1977), the Fourth Circuit adopted the common law rule that termination of the proceedings in a manner not unfavorable to the plaintiff is a necessary element of the offense. *Id.* at 940. Strictly speaking, the fact-finding process ended unfavorably to the plaintiff in this case. The disciplinary panel considered the testimony of the reporting officer and another officer who was at the scene; the panel then reviewed the written statements of the plaintiff's witnesses; finally, it concluded that the plaintiff was guilty of the offense. The charge was expunged only for the reason that the plaintiff's witnesses were not permitted to make their statements in person.

Even if the proceeding is viewed as ending in the plaintiff's favor, the plaintiff has not shown a constitutional deprivation which would entitle him to bring his malicious prosecution claim under Section 1983. The fact that a tort may have been committed by a State officer does not automatically confer a federal right of action. *Baker v. McCollan,* —— U.S. ——, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976); *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). A recent decision, *Pyles v. Keane,* 418 F.Supp. 269 (S.D.N.Y. 1976), places the claim of malicious prosecution in the proper constitutional perspective:

> Conduct that may give rise to an action for malicious prosecution may also constitute a violation of Section 1983 if, acting under color of state law, the defendant has thereby subjected the plaintiff to a deprivation of constitutional magnitude. *See Nesmith v. Alford,* 318 F.2d 110, 126 (5th Cir. 1963). But, standing alone, a claim for malicious prosecution—although it may describe conduct reprehensible in

the extreme—is not enough to support a cause of action under Section 1983.

*Id.* at 276.

The Fourth Circuit's decision in *Morrison v. Jones, supra,* did not undertake to consider the claim of malicious prosecution in light of the contemporaneous analytical developments in *Paul v. Davis, supra,* and *Estelle v. Gamble, supra.* After applying the reasoning in those decisions to the case at hand, the Court concludes that the plaintiff has failed to state a claim actionable under Section 1983 because he has not shown a constitutional deprivation stemming from the actions of defendant Walker. While the plaintiff served five days in isolation, this sanction was based on the Adjustment Committee's finding of guilt. Again, the Court does not sit to review the factual findings of disciplinary panels. *Flythe v. Davis, supra.* A prisoner should not be permitted to challenge the Adjustment Committee's disposition indirectly when he cannot do so directly.

The only deprivation which the plaintiff alleges that might be attributable to Corporal Walker is the restriction of his First Amendment rights of free speech. According to the plaintiff, he became involved in an argument with Corporal Walker over a butane lighter, and Corporal Walker brought the disciplinary charge in retaliation. It is unclear whether the plaintiff views his side of the butane lighter argument or the statement that Corporal Walker was bringing dope into the correctional center, or both, as constitutionally protected speech. In either case, the Court finds that the speech is not constitutionally protected. *See Chitwood v. Feaster,* 468 F.2d 359 (4th Cir. 1972); *compare Cavey v. Levine,* 435 F.Supp. 475 (D.C.Md.1977). Disputes of the type related by the plaintiff are best left to resolution in the disciplinary process itself. The Court cannot routinely involve itself in relations of prison officials and prisoners. A prison officer's decision to bring a charge against a prisoner is so related to the legitimate concern for discipline that a court should intervene only under exceptional circumstances. *See Jones v.*

*North Carolina Prisoners' Union,* 433 U.S. 119, 129–132, 97 S.Ct. 2523, 53 L.Ed.2d 629; *Pittman v. Hutto,* 594 F.2d 407, 411 (4th Cir. 1979). Prisoners should not be permitted to cry "malice" and obtain review any time a disciplinary proceeding arguably ends in their favor. Intervention is not required in this case because disciplinary review procedures proved sufficient to take care of this matter. The plaintiff's claim against Corporal O. J. Walker does not rise to the level of a constitutional deprivation cognizable under Section 1983 and Corporal Walker will also be dismissed as a party to this action.

◼ Finally, the plaintiff alleges that the defendant, Patty Brown, Chairman of the Adjustment Committee panel, violated procedural rights afforded him by the decision in *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) because defense witnesses were not permitted to appear in person at the disciplinary hearing. He also contends that Sergeant N. E. Whitlow told him that defense witnesses were not allowed to appear in person and that he would have to submit written statements from his witnesses if he desired the hearing panel to consider their testimony. Sergeant Whitlow has denied making the statement attributed to him. If the failure to permit witnesses to appear in person stated a claim actionable under Section 1983, the Court would order an evidentiary hearing to resolve the factual questions of the involvement of Sergeant Whitlow and Officer Brown in the denial of the plaintiff's procedural rights at his disciplinary hearing. However, the Court finds that the plaintiff does not have a constitutional right to have witnesses in his defense personally appear at his disciplinary hearing. The claim against Whitlow and Brown will therefore be dismissed.

The plaintiff places undue reliance on *Wolff v. McDonnell, supra,* in support of his claim that he was entitled, as a matter of right, to the presence of his witnesses. In *Wolff,* the Supreme Court did not go so far as to set a constitutional requirement that inmates be allowed to call witnesses in his defense at his hearing. Rather, this was judged to be a matter within the discretion of prison authorities. 418 U.S. at 566–567, 94 S.Ct. 2963. The Court made certain recommendations as to appropriate procedures, but it did not give them constitutional effect.

◼ Nor does the plaintiff derive a constitutional right to present witnesses from guidelines adopted by the Department of Corrections in this instance. The Court's attention is referred to Guideline No. 861(IV)(C)(3)(c), which provides as follows:

[An inmate] has the right to present the voluntary testimony of witnesses, either inmates, correctional personnel or others, in his/her own behalf . . .

Adoption of the rule indicates that the Department of Corrections shares the concern of the United States Supreme Court that fairness be assured in disciplinary proceedings. Failure to strictly comply with the rule cannot be translated into a constitutional deprivation, however, because there is not a constitutional right to have witnesses present at the hearing. *Wolff v. McDonnell,* 418 U.S. at 566–567, 94 S.Ct. 2963. Therefore, because the regulation in question is not intended to secure a constitutionally protected right, a violation of the regulation is not actionable under Section 1983. *United States v. Caceres, supra.* Compare *McCourt v. Hampton,* 514 F.2d 1365 (4th Cir. 1975).

The Court would emphasize that the record shows that Superintendent Baskerville made a commendable effort to carry out the spirit of the holding in *Wolff,* assuring that inmates are given a fair opportunity to defend themselves against disciplinary charges. When Superintendent Baskerville discovered that the guideline had not been followed, and that the plaintiff had to rely only on the written statements of witnesses, he immediately sought approval to have the charge expunged from the plaintiff's record. The Court finds this encouraging for it shows that the Supreme Court in *Wolff* did not err when it placed confidence in prison officials to fairly administer disciplinary proceedings. This claim will not be

## 1162

considered further, and the complaint will be dismissed.