**Douglas KELLY**

v.

**Officer J. COOPER et al.**

**Civ. A. No. 80–1023–R.**

United States District Court,
E. D. Virginia,
Richmond Division.

Dec. 29, 1980.

Douglas Kelly, pro se.

James E. Kulp, Deputy Atty. Gen., Richmond, Va., for defendants.

## MEMORANDUM AND ORDER

WARRINER, District Judge.

Douglas Kelly, an inmate currently residing at the Haynesville Correctional Unit, proceeding *pro se* and *in forma pauperis*, brings this civil rights complaint, under 42 U.S.C. § 1983, against J. A. Tilman, III, chairman of the Adjustment Committee at Powhatan Correctional Center, G. M. Johnson, Warden of Powhatan, and J. Cooper, an officer at the Chesterfield Correctional Unit.

A. Claims against defendant Tilman

Plaintiff's claims against defendant Tilman relate solely to Tilman's handling of an adjustment committee hearing held on 12 August 1980 at Powhatan Correctional Center at which plaintiff was found guilty of possessing marijuana while at the Chesterfield unit. Plaintiff claims that his constitutional rights were violated because defendant Tilman (1) refused to grant him a continuance of the hearing to allow plaintiff an adequate opportunity to secure the presence of his private attorney, (2) permitted the adjustment committee to find plaintiff guilty without sufficient evidence, and (3) discriminated against plaintiff by placing him in "isolation away from everyone else in isolation."

(1) Denial of Counsel at Hearing

Although the Constitution does not require that states provide attorneys to assist inmates charged with institutional infractions, *Baxter v. Palmigiano*, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974); the Virginia Department of Corrections has promulgated regulations which grant an accused inmate the right to employ or retain a private attorney to present whatever defense is available. Virginia Department of Corrections Guideline Number 861 VI.C.3.a. (1976). The regulations specifically state, however, that the accused bears the responsibility of contacting the attorney and arranging for the attorney's presence at the hearing. *Id.* 861 VI.C.5.a., 861 VI.E.2.d.i.

Shortly after the 12 August 1980 adjustment committee hearing began, plaintiff notified defendant Tilman that his private attorney was not present due to the fact that plaintiff had been transferred several times during the period immediately preceding the hearing and his attorney did not know where he was. Instead of granting a continuance to allow plaintiff to contact his attorney and arrange for his presence at the hearing[1], defendant proceeded with the hearing which resulted in a conviction. Plaintiff served 15 days in isolation as punishment.

---

1. See Guideline 861 VI.F.iv. (continuance may be granted for convenience of attorney).

Defendant Tilman's actions were specifically disapproved by the Regional Administrator of the Department of Corrections, who reversed the decision of the adjustment committee. In a letter of notification, dated 31 October 1980, the Regional Administrator told plaintiff:

> We are in agreement with your contention that your hearing should have been continued so that your attorney could be present at the hearing. As you are aware, in the usual circumstance it is the duty of the attorney to contact the Adjustment Committee Chairman to request any continuance so that he may be present at a hearing. Your case was unique in that you had been moved through several institutions immediately preceding your hearing. It is quite likely that your attorney, under such circumstances, did not know where you were or who to contact regarding the scheduling of your hearing.

The Regional Administrator also directed that all mention of the charge be expunged from plaintiff's institutional record.

■ The Court will assume, for present purposes, that defendant Tilman did, in fact, violate prison guidelines by not granting a continuance under these circumstances. Nevertheless, plaintiff has failed to state a cause of action under § 1983, and a response from defendant will not be required at this time.

For many years it was thought that whenever an agency violated its own regulations an aggrieved party was denied due process:

> [W]hen the sovereign has established rules to govern its own conduct it will be held to the self-imposed limitations on its own authority, departure from which denies procedural due process of law.

*Bluth v. Laird,* 435 F.2d 1065, 1071 (4th Cir. 1970) (Army's failure to comply with own regulations violated procedural due process right of aggrieved officer); *see also U. S. v. Heffner,* 420 F.2d 809 (4th Cir. 1969) (IRS regulation held binding even though "more generous than the constitution"); *White v. Keller,* 438 F.Supp. 110, 120 (D.C.Md.1977),

*aff'd* 588 F.2d 913 (4th Cir. 1978) (prison regulations on visitation procedures "may confer upon individuals the right to the benefit of those procedures and the failure to afford or abide by them is a denial of due process"). This line of analysis has, however, been significantly altered by the recent decision in *U. S. v. Caceres,* 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979), as this Court has previously noted in *Pollard v. Baskerville,* 481 F.Supp. 1157 (E.D.Va.1979), *aff'd* 620 F.2d 294 (4th Cir. 1980).

In *Caceres,* the Court held that a recording of a bribe offer made by Caceres during a face to face conversation with an IRS agent could be admitted as evidence at his criminal trial even though the IRS violated its own regulations when it recorded the conversation by failing to secure proper approval from the Justice Department. The Court first noted that violation of the regulation denied Caceres neither due process nor equal protection, and then "declined to adopt a rigid rule requiring federal courts to exclude any evidence obtained as a result of violation of [agency] rules." *Id.* at 755. Although the analysis of the constitutional implications of violations of agency regulations was made in the context of a criminal prosecution, the importance of *Caceres* in other regulatory contexts has been recognized. *Agency Regulations Due Process and the Exclusionary Rule,* 46 Brooklyn Law Review 147; *The Supreme Court, 1978 Term,* 93 Harvard Law Review, 108–118.

The *Caceres* Court identified three situations in which the failure to comply with an agency's regulations would result in constitutional violations. First, a constitutional violation would occur if the agency violated regulations which the Constitution required it to establish. 440 U.S. at 749, 99 S.Ct. at 1470. Thus, if the Due Process Clause of the Constitution required the states to grant inmates the right to obtain counsel at adjustment committee hearings, the violation of prison regulations designed to implement that requirement would be a violation of due process. There is, however, no such constitutional requirement. *Baxter, Wolff, supra.* This aspect of *Caceres* is, therefore, inapplicable here.

The Court next briefly considered the circumstances under which the failure to comply with prison regulations deprives an individual of equal protection. The Court's remarks on this point consisted of the following:

It is true, of course, that respondent's conversations were monitored without the approval of the Department of Justice, whereas the conversations of others in a similar position would, assuming the IRS generally follows its regulations, be recorded only with Justice Department approval. But this difference does not even arguably amount to a denial of equal protection. No claim is, or reasonably could be, made that if the IRS had more promptly addressed this request to the Department of Justice, it would have been denied. As a result, any inconsistency of which respondent might complain is purely one of form, with no discernible effect in this case on the action taken by the agency and its treatment of respondent.

Moreover, the failure to secure Justice Department authorization, while conceded here to be a violation of the IRS regulations, was attributable to the fact that the IRS officials responsible for administration of the relevant regulations, both in San Francisco and Washington, construed the situation as an emergency within the meaning of those regulations. Their construction of their own regulations, even if erroneous, was not obviously so. That kind of error by an executive agency in interpreting its own regulations surely does not raise any constitutional questions.

440 U.S. 752, 99 S.Ct. 1472. Although the Court appears to imply that mere errors in judgment on the part of government officials applying their own regulations may deprive an individual of equal protection, quite obviously, the Court did not, in this short passage, intend a major change in equal protection analysis. Thus, the requirement that one claiming a denial of equal protection establish that he suffered intentional and purposeful discrimination remains unchanged. *Arlington Heights v. Metropolitan Housing Development Corp.*, 429 U.S. 252, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977); *Washington v. Davis*, 426 U.S. 229, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Oyler v. Boles*, 368 U.S. 448, 82 S.Ct. 501, 7 L.Ed.2d 446 (1962); *Snowden v. Hughes*, 321 U.S. 1, 64 L.Ed. 397, 88 L.Ed. 497 (1944); *Yick Wo v. Hopkins*, 118 U.S. 356, 6 S.Ct. 1064, 30 L.Ed. 220 (1886); *Strauder v. West Virginia*, 100 U.S. 303, 25 L.Ed. 664 (1880). Plaintiff does not assert that defendant Tilman deliberately denied his motion for continuance of the hearing because of a desire to harm him, and in any event, plaintiff's description of defendant Tilman's handling of the hearing negates such an inference. Plaintiff has not been denied equal protection of the law.

The *Caceres* Court next stated that due process is violated when "an individual has reasonably relied on agency regulations promulgated for his guidance or benefit and has suffered substantially" because the agency violated them. 440 U.S. at 752–753, 99 S.Ct. at 1472. Two of the cases cited by the Court in support of this statement illustrate when a due process violation of this type occurs.

In *Raley v. Ohio*, 360 U.S. 423, 79 S.Ct. 1257, 3 L.Ed.2d 1344 (1959), appellants were convicted in the Ohio state courts for refusing to answer certain questions asked of them at sessions of the Ohio Un-American Activities Commission. The appellants had been erroneously informed by the Commission that, under Ohio law, they had a right to refuse to testify. The Ohio Supreme Court affirmed the conviction holding that appellants were presumed to know the law. The U.S. Supreme Court rejected this, finding that the appellants had reasonably relied on the Commission's interpretation of Ohio state law, and that to affirm the convictions "would be to sanction an indefensible sort of entrapment by the State—convicting a citizen of exercising a privilege which the State had clearly told him was available to him." 360 U.S. at 425, 79 S.Ct. at 1260.

■ The same principle was applied in *Cox v. Louisiana*, 379 U.S. 559, 85 S.Ct. 476, 13 L.Ed.2d 487 (1965). Cox had been convicted of violation of a Louisiana statute prohibiting demonstrations near a Courthouse. Cox established that responsible officials had given permission for his demonstration to take place across the street from a courthouse. The Court held that it would violate due process to sustain Cox's conviction after he reasonably relied on the word of these officials.

Thus, to establish that plaintiff was denied due process, based on the *Raley-Cox* principle, he must demonstrate that he would have prevailed at the 12 August 1980 adjustment committee hearing had he not relied on the regulations permitting him to have his attorney present to assist him. A showing that he would have benefited from the presence of his attorney is, of course, not relevant. Instead, plaintiff must show that he was worse off than he would have been had he known all along that he would not be allowed to have his attorney present. Plaintiff will be granted 20 days within which to file an amended complaint alleging facts sufficient to demonstrate the requisite detrimental reliance. Failure to so amend will result in dismissal of this claim.

### (2) Insufficient Evidence of Guilt

■ Plaintiff's second claim against defendant Tilman is that he denied plaintiff due process of law by allowing the adjustment committee over which he presided to find him guilty based upon insufficient evidence. However, the Court does not sit to review the factual findings of prison disciplinary committees. *Pollard, supra; Flythe v. Davis*, 407 F.Supp. 137 (E.D.Va.1976). This claim must, therefore, be dismissed.

### (3) Placement in Isolation

■ Plaintiff's last claim against defendant Tilman is that he violated his constitutional rights by placing him in total isolation. Solitary confinement is recognized as a punishment that may legitimately be inflicted upon inmates convicted of institutional offenses. See *Wolff, supra*. Plaintiff's claim that defendant Tilman "discri-

minated against [him] by ordering [him] placed in isolation away from everyone else" must be dismissed.

### B. Claims against defendant Johnson

Plaintiff claims that defendant Johnson violated his constitutional rights by failing to respond within the time proscribed by prison regulations to his appeal of the adjustment committee's finding of guilt. Plaintiff claims that he submitted his appeal on 13 August 1980 but that defendant Johnson did not respond to it until 4 September 1980, well beyond the period established in Guideline 861.

■ Under *Caceres*, plaintiff is not entitled to relief. Administrative review of prison disciplinary actions is not required by the Fourteenth Amendment. *Wolff, supra*. Furthermore, the Court considers any suggestion that plaintiff relied to his substantial detriment upon the prospect of receiving a decision on his appeal within eight days rather than 30 or 40 days to be completely without merit. Cf. *Raley, Cox, supra*. Finally, nowhere in the complaint does plaintiff suggest that Warden Johnson deliberately delayed his decision on plaintiff's appeal. There is, therefore, no reason to believe that plaintiff has been denied due process or equal protection based on defendant Johnson's failure to respond to the appeal promptly.

■ Finally, plaintiff claims that defendant Johnson "discriminates" against all those found guilty by the adjustment committee by not following the division guidelines regarding appeals. At most this could be viewed as a claim that defendant Johnson does not perform his duties under the guidelines adequately. Such violations of prison regulations, without more, do not implicate constitutional concerns. *Caceres*. This claim must also be dismissed.

### C. Claims against Officer Cooper

■ First, plaintiff claims that Officer Cooper submitted false evidence at plaintiff's adjustment committee hearing. To the extent that plaintiff seeks expunge-

ment of his possession of marijuana charge, this claim is moot since the charge has already been ordered expunged by the Regional Administrator. *Inmates v. Owens*, 561 F.2d 560 (4th Cir. 1977); *Pollard, supra*, at 1159. To the extent plaintiff seeks damages from defendant Cooper, his claim is essentially one of malicious prosecution. *Morrison v. Jones*, 551 F.2d 939 (4th Cir. 1977). An essential element of this cause of action is that the proceedings terminate in a manner "not unfavorable" to the plaintiff. *Id.* at 940. Although plaintiff's conviction was reversed by the Regional Administrator, reversal on procedural grounds is not sufficient to satisfy the *Morrison* rule. *Pollard*, 481 F.Supp. at 1160. This claim must also be dismissed.

Finally, plaintiff claims that defendant Cooper discriminated against him racially. This claim is not adequately presented. Plaintiff will be granted 20 days within which to file an amended complaint stating exactly when and how defendant Cooper discriminated against him racially. Plaintiff must supply concrete facts to support this allegation. Failure to so amend within 20 days will result in dismissal of this claim.

It is so ORDERED.