**Larry Junior WARD, Appellant,**

v.

**Gene M. JOHNSON, Warden, Sgt. Gardner, Chairman of Adjustment Committee, Appellees.**

**No. 79–6304.**

United States Court of Appeals, Fourth Circuit.

Argued Oct. 7, 1981.

Decided Dec. 30, 1981.

Carter Glass, IV, Richmond, Va. (Mays, Valentine, Davenport & Moore, Richmond, Va., on brief), for appellant.

Richard F. Gorman, III, Asst. Atty. Gen., Richmond, Va., (Marshall Coleman, Atty. Gen. of Va., Richmond, Va., on brief), for appellees.

Before WINTER, Chief Judge, HAYNSWORTH, Senior Circuit Judge, and RUSSELL, Circuit Judge.

WINTER, Chief Judge:

Plaintiff, a prisoner convicted under state law and incarcerated in a state penal institution, sued Gene M. Johnson, the warden of the institution in which plaintiff was confined, and H. T. Gardner, the chairman of the institution's disciplinary committee which sentenced plaintiff to a loss of eight recreation periods for his alleged interference with prison guards' efforts to quell a fight between two other prisoners. After the plaintiff served this punishment, the

disciplinary conviction was stricken from his record. The suit was brought under 42 U.S.C. § 1983 and the only relief prayed for was the recovery of money damages.

The issue we must decide is the extent of a prisoner's right, if any, to call witnesses at a prison disciplinary hearing. Plaintiff sought to produce the testimony of three inmates in his defense, but he was denied the right to call them. He contends that he was thus denied procedural due process. The district court gave judgment for defendants on the ground that the loss of recreational time was too insignificant to constitute a claim of constitutional magnitude.[1]

We reverse as to defendant Gardner and remand for an award of nominal damages. As to defendant Johnson, we affirm.

## I.

On December 15, 1977, plaintiff had completed a recreational period in the recreation yard of the Mecklenburg Correctional Center. After he was placed in handcuffs and restraints and directed to go indoors, inmate Ronald Graham attacked several inmates with a radio antenna, employing it like a knife. Plaintiff kicked Graham but it is disputed whether this was done in self-defense or whether Graham had already been subdued so that the kick was an unprovoked assault by plaintiff. In any event plaintiff was pushed by the guards up the stairs to the interior of the institution and taken to his cell.

As a result of the incident, plaintiff was charged with "Delaying Hinderling [sic] or interfering with an employee in performance of his duties," and the description of the offense given was that the plaintiff was observed "resisting and wrestling ... [with two prison officers] as they were attempting to break up a fight ... on the recreation yard." The offense charged was a Category B offense which carried a maximum penalty of loss of good conduct time up to thirty days, or isolation from one to fifteen days, or both. Virginia Department of Corrections Guideline No. 861(IV)(A) and (B). A hearing on the charge before the disciplinary committee was conducted four days later. Plaintiff appeared, not represented by counsel but assisted by an inmate advisor, and testified that he had not been wrestling with prison officials, but instead had been trying to maintain his balance while being pushed upstairs.

The charging officer testified at the hearing and stated that plaintiff's interference with the guards' efforts to subdue Graham consisted of plaintiff's kicking Graham. As to the alleged wrestling, the officer conceded that plaintiff may have been trying to keep his balance, but he claimed that he had seen plaintiff kick Graham and this led him to infer that plaintiff was wrestling with the officers rather than merely maintaining plaintiff's balance. In closing the hearing, defendant Gardner, who was the presiding officer, read the written statements of three inmate witnesses into the record. They were to the effect that plaintiff was only trying to protect himself from Graham and trying to prevent Graham from stabbing another inmate, and that plaintiff did nothing to hinder or interfere with the officers. Indeed one statement suggested that the officers mistook plaintiff for Graham when the officers jumped him and roughly pushed him up the stairs. These statements, of course, had been prepared before the hearing and they did not directly respond to the charging officer's testimony that plaintiff had kicked Graham without provocation. When plaintiff sought the production of these three inmate witnesses to give live testimony, his motion was denied on the ground that any testimony from them would be cumulative and would not make any difference in the decision to be

---

1. The district court also decided other issues adversely to plaintiff which are not questioned on appeal. These included plaintiff's claim that he was denied access to the courts and his claim that the warden intentionally delayed decision on his administrative appeal so that he actually lost his recreational periods before the charges against him were dismissed. Because the correctness of these rulings of the district court is not questioned before us, we do not consider them.

reached. Plaintiff was found guilty and deprived of recreation for ten days (eight recreational periods). He took an administrative appeal to defendant Johnson and the charges against him were ultimately dismissed. Dismissal was not granted, however, until after the punishment had been served.

This suit ensued.

## II.

In *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), the Court defined the procedural due process rights of prisoners with regard to prison disciplinary proceedings. Under consideration in *Wolff* was Nebraska's disciplinary regime which could result in loss of good time as well as disciplinary confinement ("solitary" confinement). Included in the general consideration was a discussion of a prisoner's right to call witnesses, and the rule established was that "the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals."[2] At the same time, the Court said that it was

not suggesting that the procedures prescribed "would also be required for the imposition of lesser penalties such as the loss of privileges." 418 U.S. at 571 n.19, 94 S.Ct. at 2982 n.19.

*Wolff's* discussion of a prisoner's right to call witnesses was quoted and cited with approval in *Baxter v. Palmigiano*, 425 U.S. 308, 320–21, 96 S.Ct. 1551, 1559, 47 L.Ed.2d 810 (1976), where the right to call witnesses was contrasted with the rights of confrontation and cross-examination. In *Baxter*, lest there be doubt as to the basis of the holding in *Wolff*, it was stated that "[t]he right to call witnesses, *like other due process rights delineated in Wolff,* is thus circumscribed" by the necessity of a mutual accommodation between the rights of the individual and the needs and objectives of the institution. 425 U.S. at 321, 96 S.Ct. at 1559 (emphasis supplied). The right has been recognized in Virginia. Virginia's Department of Corrections Guideline No. 861(VI)(D)(3)(c) states that an inmate charged with an infraction meriting punishment has the right to "present the *voluntary* testimony of witnesses, either inmates, correctional personnel or others, in his/her

---

**2.** The entire passage from which the quotation in the text is drawn should be considered for the elaboration on the general principle which it contains. It follows:

We are also of the opinion that the inmate facing disciplinary proceedings should be allowed to call witnesses and present documentary evidence in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must

have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is this much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents.
418 U.S. at 566–67, 94 S.Ct. at 2979–80.

own behalf ..." (emphasis in original).[3] The guidelines limit the right to present live testimony to that which is relevant and that which is not repetitious. *See* No. 861 (VI)(H)(2)(b)(ii).

■ Based upon *Wolff* and *Baxter*, we are of the view that a prisoner faced with disciplinary proceedings resulting in a loss of good time or disciplinary confinement has a constitutional right to call witnesses in his defense when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals. We recognize that there is contrary authority in this circuit. *See Pollard v. Baskerville*, 481 F.Supp. 1157 (E.D.Va.1979), *aff'd*, 620 F.2d 294 (4 Cir. 1980) (table). At the same time there is also a decision in accord with our conclusion. *See Bratten v. Smith*, 649 F.2d 862 (4 Cir. 1981) (unpublished). But our decision in neither *Pollard* nor *Bratten* is binding authority, *see* Fourth Circuit Local Rule 18(d)(i) and (ii), and we are persuaded that the district court opinion in *Pollard* is in conflict with what was said in *Wolff* and *Baxter*.

In the instant case there is a subsidiary question whether the rule of *Wolff* applies, because plaintiff suffered a loss of only eight recreational periods—a loss of privileges—and not the loss of good time or a stint in solitary confinement. The answer depends upon whether the applicability of the *Wolff* rule depends upon the punishment actually imposed or upon that which might have been imposed, because plaintiff was exposed to a maximum penalty of loss of some good time and a limited period of solitary confinement.

■ The Supreme Court stated in *Baxter* that it would not consider whether minimal procedural due process was required when a prisoner was deprived only of privileges, because the prisoners who were plaintiffs in that case "were brought before prison disciplinary hearings for allegations of the type of 'serious misconduct' ... that we held in *Wolff* to trigger procedures therein out-

lined." 425 U.S. at 323, 96 S.Ct. at 1560. This seems to indicate that the test is the severity of the potential punishment and not the actual punishment. The two courts of appeals which have considered the question have both come to that conclusion. *See Gates v. Collier*, 501 F.2d 1291 (5 Cir. 1974); *Ware v. Heyne*, 575 F.2d 593 (7 Cir. 1978). We agree with those holdings.

### III.

■ Having decided that plaintiff had a qualified procedural due process right to call witnesses in his defense at his disciplinary hearing, we turn to the question of whether that right was denied and, if so, the relief to which plaintiff is entitled.

The precise basis for the denial of plaintiff's request to present the testimony of inmate witnesses is murky. The imperfect transcript of the disciplinary hearing reflects that the witnesses were not heard because they were "accumulative [sic]." In response to an interrogatory asking why the witnesses were not called, defendant Gardner answered "I don't recall." At trial Gardner testified that the witnesses were not called because their testimony was irrelevant.

Although the district court did not make a finding as to why Gardner refused plaintiff's request, there is nothing in the record other than the suggestion that the testimony was cumulative and perhaps irrelevant to justify the refusal. Specifically, there is no evidence that the presence of the witnesses would have presented any unresolvable problem of security or that their presence would have disrupted or posed any undue burden upon the workings of the institution. Indeed, the Virginia Department of Corrections Guideline purportedly gives a right to procure witnesses qualified only by the relevancy of their testimony and the fact that it is not cumulative.

■ On this record we can only conclude that defendant Gardner improperly denied

---

**3.** In the light of our discussion of this case, we find it unnecessary to consider plaintiff's contention that the failure to follow this guideline gives rise to a cause of action cognizable under 42 U.S.C. § 1983.

plaintiff his right to call witnesses. At the disciplinary hearing, the theory of plaintiff's interference with the efforts of the prison guards to subdue Graham, *i.e.* that plaintiff kicked Graham, was one that could not have been anticipated from the formal charge and the description of the offense. The statements of the three inmate witnesses were prepared before this novel theory was advanced; and while they indicated generally that plaintiff was seeking to defend himself and to prevent the stabbing of another inmate, they shed little light on whether plaintiff kicked Graham in self-defense or without provocation. Thus it cannot be said that testimony from these inmates would be irrelevant or repetitious. It follows that defendant Gardner denied plaintiff his right to procedural due process of law. The record does not even faintly suggest, however, that defendant Johnson played any actual part in this denial. Since he cannot be held liable under § 1983 under the theory of respondeat superior, he must be exonerated. *Monell v. Department of Social Services*, 436 U.S. 658, 691–95, 98 S.Ct. 2018, 2036–38, 56 L.Ed.2d 611 (1978); *Vinnedge v. Gibbs*, 550 F.2d 926, 928–29 (4 Cir. 1977).

### IV.

■ There remains only the question of the damages which plaintiff is entitled to recover from defendant Gardner.[4]

4. Our dissenting colleague would decide the case on the ground that defendant Gardner acted in the capacity of an administrative law judge and therefore is totally immune from damages. We think that this is an inappropriate case in which to consider whether the hearing officer who presides at a disciplinary committee hearing is clothed with any judicial immunity. Although Gardner claimed immunity, among other defenses, in his answer to the complaint, it was apparently not pressed in the district court. The district judge did not address it. More importantly, except for a passing statement by defense counsel that Gardner acted in good faith, the defense is undeveloped in the briefs filed with us. Moreover if we were to conclude that a hearing officer like Gardner has only qualified immunity, this record leaves the question of Gardner's good faith in declining to permit the witnesses to testify very much an open question. Thus we do not

In the district court plaintiff was unable to show any special injury that he had sustained. His only loss was eight recreation periods. Under the circumstances, we think that he is entitled to recover no more than nominal damages for the violation of his right to procedural due process of law. *Carey v. Piphus*, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); *Burt v. Abel*, 585 F.2d 613 (4 Cir. 1978). Accordingly we direct the district court on remand to enter judgment for plaintiff against defendant Gardner in the sum of $1.00.

AFFIRMED IN PART; REVERSED IN PART AND REMANDED.

DONALD RUSSELL, Circuit Judge, dissenting:

I dissent. My difference with the majority relates to what I believe to be the dispositive issue in this appeal.

In my opinion, the dispositive issue in this § 1983 action is not, as the majority assumes, whether the hearing officer at plaintiff's administrative disciplinary hearing erred in his evidentiary rulings. That is an issue which, for purposes of disposing of this action, is irrelevant. It may be conceded that the hearing officer erred in his evidentiary rulings, though it is only fair to add that his rulings are supported by a district court opinion in this circuit, which was affirmed without opinion by this Court.[1] There was, however, a right of

reach the immunity issue because a possibly significant factual basis for invoking the doctrine is not free from doubt, because it was not urged upon or addressed by the district court, and because it is not addressed or urged upon us in this appeal.

1. In *Pollard v. Baskerville*, 481 F.Supp. 1157 (E.D.Va.1979), a hearing officer in a prisoner's disciplinary administrative hearing had denied the prisoner the right to have his defense witnesses "appear in person at the disciplinary hearing" and limited his presentation to "written statements from [the prisoner's] witnesses." *Id.* at 1161. The district court, applying as it understood *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), held that the prisoner in such proceedings did "not have a constitutional right to have witnesses in his defense personally appear at his disciplinary hearing." *Id.* at 1161. That opinion was

administrative appeal from such rulings. The plaintiff did appeal and the presiding officer's rulings were in effect voided and the plaintiff-prisoner was relieved of any deprivation on account of such rulings.

The critical and dispositive issue present in this § 1983 action which should have been addressed first on this appeal, was whether the presiding officer in the administrative proceedings is immune from any personal liability under § 1983 for any error in evidentiary rulings made by him in the course of the administrative proceedings. If the answer is that the hearing officer is immune, then that answer is *dispositive* of the issue of the officer's personal liability in this case. It is that issue which the court in this case should, in my opinion, have initially addressed. That issue, however, is neither mentioned nor addressed in the majority opinion except in a footnote declaring this is not an appropriate case for the consideration of such issue. With all deference, I do not think we can pass over the dispositive issue in the case on that basis.

The majority would justify passing over this critical issue by declaring that this is "an inappropriate case on which to consider whether the hearing officer who presided at a disciplinary committee hearing is clothed with any judicial immunity." It seems to reach this conclusion because the district court did not discuss the issue and such defense was "not developed in the briefs filed with us." It does concede, however, that, by his answer, whether the district court decided it or not, the defendant did raise the issue. But whether the defendant in his brief in this case "developed" the point or the district court discussed immunity is not the issue.[2] We are expected to do justice and, upon appeal, we are not confined in our decision by what the court below may have said or not said nor are we to disregard an absolute defense manifest

indubitably on the record because it has not been fully "developed" by the defendant in his brief in this Court.

Simply because a party inadequately argues a point or a district court neglects to rule on the point is no reason for us to disregard a point, a decisive point in the disposition of the case. The defendant has suffered a judgment against him. The amount of the judgment is minimal but the legal costs of the action are not. They may involve both the costs of the trial in the district court and the proceedings in this court, as well as the allowance of an attorney's fee. This defendant, who obviously is a person of limited resources and who would suffer a real deprivation if forced to pay an unfair judgment, is facing a judgment of what may well be several thousands of dollars in costs. If he is immune from liability, it is wrong for him to be forced to pay that judgment and I submit it is our duty to inquire whether he is immune and, if he is, to free him from liability. We cannot stand by, shielded by the inaction perhaps of the district court or the inattention of counsel, and allow the defendant to be mulcted illegally and unfairly in damages when it is plain he is immune. I repeat: Courts exist to do justice and, if it is clear on the record that the defendant is immune from liability—as I submit the defendant is in this case—we are obligated to dismiss the action against the defendant. Since I think, with all respect for the contrary views of my brothers, that there is immunity in this case we should so declare, thereby affirming the dismissal of this action by the district court.

An administrative hearing officer, in my opinion, who is in effect an administrative law judge, is clothed with the same immunity as a judge in connection with any rulings made by him in the course of the administrative hearing itself. I perceive no more

---

affirmed by this Court without an opinion [620 F.2d 294 (Tables) 1980]. Thus, at least four judges of this Circuit have applied substantially the same rule as did the administrative hearing officer. They are immune from any liability on account of such ruling. Why is not the administrative hearing officer in this case?

**2.** Actually the failure of the district court to discuss the fact, may be explained by the fact that the district court, which dismissed the plaintiff's claim on other grounds, saw no reason to discuss the immunity issue.

reason to deny him such immunity than to deny it to a district judge. The compelling reasons which confer immunity on the judge, even when his ruling or judicial action may violate a litigant's most fundamental rights, are equally applicable to the administrative law judge. Is one any more entitled to sue a hearing officer under § 1983 for error in his rulings in the course of administrative proceedings, than one, who has been denied by a trial judge his constitutional right of cross-examination, or the right to call witnesses on relevant issues, would have a right to sue the judge for such denial?

Administrative law judges are a definite part of the judicial process and perform the same function as judges, only at a lower level. They certainly are analogous in any event to magistrates, who are admittedly immune from liability for their rulings, *Timmerman v. Brown*, 528 F.2d 811, 814 (4th Cir. 1975). If administrative officers are to be denied immunity that normally protects the judicial officer in his official actions,[3] who will be willing to accept the hazards of acting as an administrative law judge, knowing as he does that if he errs, he will be liable personally in damages?

Administrative proceedings for the resolution of disputed disciplinary actions in the prison context have grown immeasurably since the courts have required administrative hearings in the more serious disciplinary actions. In such administrative proceedings—just as in other administrative proceedings as well as in actual trial at the district court level—there is always the danger that the initial presiding officer may commit an error which could be regarded as violative of a fundamental right. Will one be willing to act as a hearing officer in such a proceeding with the threat over his head of a suit for personal damages if he errs in some ruling in the proceeding,

especially where, as here, there is a right of administrative appellate review?

I would hold that the defendant Gardner was immune from liability for any error in any ruling that he may have made in the course of the administrative disciplinary proceedings, and I would affirm the dismissal of the action by the district court.

---

**3.** In *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 1104, 55 L.Ed.2d 331 (1978), the Court said:

"A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liabili-

ty only when he has acted in the 'clear absence of all jurisdiction.'" (Quoting from *Bradley v. Fisher*, 13 Wall. 335, 351, 20 L.Ed. 646 (1872)).

This rule of judicial immunity was held to apply to § 1983 actions. *Id.* at 356, 98 S.Ct. at 1104.