1. Plaintiff's First Amended Complaint spells defendant Christiansen's name "Christianson";

plaintiff has persuaded us—with arguments that were fully explored on oral argument on the record—that the appeal could well have such an effect. In view of the clear desirability of appellate review, we therefore grant the § 1292(b) certification.

Let the order referring the matter to Magistrate Buchwald be stayed pending the Court of Appeals' decision whether or not to accept the interlocutory appeal or, in the event of such acceptance, its disposition on the merits.

SO ORDERED.

**Wesley KING, Plaintiff,**

v.

**H. Gary WELLS, Superintendent of the Muskegon Correctional Facility; Inspector (John Doe) Christiansen [1] of the Muskegon Correctional Facility, Defendants.**

**Civ. No. 79–70834.**

United States District Court,
E. D. Michigan, S. D.

July 9, 1982.

however, it appears from defendants' motion that "Christiansen" is the proper spelling.

Wesley King, in pro. per.

J. Peter Lark, Asst. Atty. Gen., Frank J. Kelley, Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

COHN, District Judge.

This is a prisoner civil rights case, 42 U.S.C. § 1983, alleging violation of plaintiff's procedural due process rights in an administrative disciplinary hearing. Before the Court is defendants' motion to dismiss for failure to state a claim or in the alternative for summary judgment. Fed.R.Civ.P. 12(b)(6), 56(b).

### I.

### A.

On October 25, 1977 a major misconduct report was issued against plaintiff, at that time an inmate in the Muskegon Correctional Facility of the Michigan Department of Corrections.[2] The issuing officer, Sgt. Prince, stated in the report that on the evening of October 25 he was approached by another inmate, Goldsmith, who gave him a tightly rolled piece of poster paper with a rubber band around it and asked him to give it to plaintiff. Prince went to the Health Services Unit where plaintiff was assigned at the time and asked plaintiff if he could open the package. Upon unrolling the poster Prince found a homemade weapon inside consisting of a toothbrush with a razor blade melted into the handle. The report indicates that Nurse Becky Lampley was present when the package was opened.

Plaintiff was charged with conspiracy to receive dangerous contraband and placed in administrative segregation on October 26, 1977. The report does not indicate the reason for placing plaintiff in segregation; presumably it was as a consequence of the misconduct charge.[3] The report indicates that plaintiff requested a staff hearing and two witnesses, "Dr. Huff and Head Nurse Diana [Haynor]". The boxes to mark "Yes" or "No" to the question, "Relevant Documents Requested?", are left blank in the report. The report contains the additional comment, "Resident states he knew nothing of the package until approached by Sgt. Prince."

On October 28, 1977 defendant Christiansen conducted a hearing at which he heard testimony from plaintiff and reviewed the misconduct report and the staff investigator's report which contained written "witness statements" from ten persons including plaintiff. The Hearing Report, Dx B, states that plaintiff's defense was that he had been "set up" by Nurse Lampley and an inmate named Thompson because he had seen them having sexual intercourse in the Health Services Unit on the evening of October 22, 1977. Christiansen found plaintiff guilty, stating:

> "Based on the written report that King was waiting inside the door of H. S.

---

**2.** Four exhibits are attached to defendants' motion. Exhibit A (Dx A) is a copy of the major misconduct report. Exhibit B (Dx B) is a copy of the misconduct hearing report. Exhibit C (Dx C) is a copy of plaintiff's appeal of the hearing decision and the superintendent's denial of the appeal. Exhibit D (Dx D) consists of "witness statements" from 10 persons, including plaintiff, apparently gathered by the staff investigator. Dx D also includes a memorandum dated November 29, 1977 from the hearing officer, defendant Christiansen, to the superintendent, defendant Wells, summarizing the charge, hearing, appeal and subsequent security review. Defendants omit two witness statements from Dx D on the grounds that they are "relatively innocuous" and that the witnesses requested anonymity. No report by the staff investigator, apart from the witness statements, is included. Apart from the two omitted witness statements and the investigator's report, if it exists, the four exhibits appear to comprise the administrative record.

**3.** According to current departmental guidelines, possession of dangerous contraband is a "non-bondable" offense requiring automatic confinement in segregation or "top-lock" pending a hearing on a misconduct report. Michigan Department of Corrections, Policy Directive DWA–60.01, effective September 28, 1981.

[Health Services] and Goldsmith gave him the poster to give to King. The staff investigator's report states that Goldsmith received the poster to hold on Monday and was delivered back to King on Tuesday."

Dx B. The penalty imposed was five days "top lock", thirty days loss of privileges, and a recommended loss of good time credit. Plaintiff's appeal to the superintendent, defendant Wells, was denied on October 31, 1977 with the statement:

"You were waiting for the poster when Goldsmith brought it to Health Services. Your notion of a 'set up' does not seem likely, under the circumstances."

Dx C. A loss of eleven months' good time credit was subsequently imposed as a penalty.

**B.**

On March 26, 1979 plaintiff filed a *pro per* complaint under 42 U.S.C. § 1983 against Sgt. Prince and Charles Anderson, Warden of the State Prison of Southern Michigan. The complaint essentially alleged that the decision finding him guilty of receiving contraband was without a factual basis. On April 12, 1979 then Chief Judge Cornelia G. Kennedy dismissed the case for failure to exhaust state remedies. The order was vacated on August 23, 1979 and the case reinstated.

On November 17, 1980 the Court accepted a Magistrate's Report and Recommendation that summary judgment be granted in favor of defendants and dismissed the complaint with leave to file an amended complaint within sixty days. Plaintiff then obtained the assistance of counsel and on January 6, 1981 filed the first amended complaint now before the Court. Count I alleges that defendants Christiansen and Wells deprived plaintiff of his constitutional right to a fair hearing on the misconduct report in violation of 42 U.S.C. § 1983. Count II alleges that the same defendants were negligent in failing to follow Michigan Department of Correction rules in conducting the hearing.[4] Both counts allege partic-

---

**4.** Neither party has provided the Court with the departmental rules in effect at the time of the October 28, 1977 hearing. The current rule, 3 Mich.Ad.Code R. 791.3315 (1979), provides:

R 791.3315 Formal hearing; notice; evidence; staff investigator; decision; waiver.

Rule 315. (1) Not less than 24 hours prior to a formal hearing, a resident shall receive written notice of the purpose of the hearing. A copy of any disciplinary report, charges of alleged violation, or description of the circumstances giving rise to the hearing shall accompany the notice. The resident shall indicate on the notice form:

(a) Necessary witnesses the resident wishes to call, if any.

(b) A request for department documents specifically relevant to the issue before the hearing officer, if any.

(c) Request for assistance of staff investigator, if necessary, to gather evidence or speak for the resident.

(2) A resident may waive the 24-hour notice requirement by signing the appropriate waiver form.

(3) A resident has the following rights at a formal hearing:

(a) To be present and speak or present written documents on his or her own behalf.

(b) To compel disclosure of department documents specifically relevant to the issue before the hearing officer, unless disclosure presents a threat to personal or institutional safety.

(c) To call necessary, relevant, and material witnesses, when to do so is not unduly hazardous to institutional or safety goals.

(d) To require the report of a staff investigator who interviewed and obtained statements from relevant witnesses, secured departmental documents subject to disclosure, and gathered other evidence.

(4) If the hearing officer denies a request made by a resident on the notice form provided under subrule (1), specific reasons for the denial shall be placed in the record. The presence of a witness is not necessary if the witness's testimony is repetitious or if the witness is able to provide the hearing officer or investigator with a complete written statement.

(5) A staff investigator shall be available when necessary to gather and present factual evidence orally or in writing, at the request of either the resident or the hearing officer. If the hearing officer determines that a resident appears to be incapable of speaking effectively for himself or herself, the hearing officer shall request the staff investigator to appear and present arguments on the resident's behalf. Failure of a staff investigator to present requested documents or statements is justifiable where to do so would be unduly hazardous to institutional or safety goals or where the information is irrelevant

ularly that the hearing was defective because plaintiff was denied the right:

—to compel disclosure of department documents specifically relevant to the issue before the hearing officer;

—to call necessary, relevant and material witnesses who posed no undue hazard to institutional or safety goals; and

—to require the report of a staff investigator who interviewed and obtained statements from relevant witnesses, who secured departmental documents subject to disclosure, and gathered other evidence.

The only relief sought is damages.

On August 17, 1981, the same day defendants' motion now before the Court was filed, the Court granted the motion of plaintiff's counsel to withdraw. Decision on the motion has been repeatedly deferred while plaintiff, now no longer incarcerated, unsuccessfully attempted to find new counsel. Arguments on the merits were finally heard on January 25, 1982, plaintiff appearing *pro se.*

## II.

Defendants' motion rests on four grounds:

—Plaintiff's allegation that he was not allowed to call witnesses at the hearing fails to state a constitutional claim because the decision whether or not to permit the calling of witnesses is solely a matter in the discretion of the prison officials.

or unnecessary to the particular case. The specific reason for such failure shall be placed in the record.

(6) The hearing officer shall render a written decision or recommendation in every case, which shall include: the reasons for the denial of a resident's request, if any; a statement of the facts found; the evidence relied upon in support thereof; and the reasons for the action taken. A copy of the decision shall be furnished to the resident, who shall be advised of the right to appeal.

(7) After being informed of the charges or circumstances giving rise to the hearing and his or her rights, a resident may make a written waiver before a designated staff person. This waives the resident's right to a hearing, but the resident shall be heard on the issue of appropriate disposition."

—Plaintiff has no constitutional right to have relevant departmental documents disclosed to him; in any event the claim is moot because all of the relevant documents have been disclosed in the present litigation except two "confidential" witness statements of limited relevance.

—Plaintiff has no constitutional right to the services of a staff investigator; nonetheless, a staff investigation was made and a report submitted to the hearing officer.

—Defendants are protected from liability for damages under the doctrine of qualified immunity.

Defendants' motion does not address the pendent negligence claim.

## III.

### A.

◼ The starting point for any discussion of the procedural due process rights of a prisoner subject to disciplinary proceedings is *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974). In *Wolff* the Supreme Court held that where a state provides that good time credit can be forfeited only for serious misconduct, minimum requirements of procedural due process must be observed before deprivation of the credit. Specifically, prison authorities must (i) give advance written notice of the claimed violation, (ii) permit the inmate to

Annotations to the Michigan Administrative Code indicate that the current rule became effective November 30, 1977; there was apparently no prior equivalent rule published in the Michigan Administrative Code. The current departmental policy directive on prisoner disciplinary proceedings, DWA–60.01, indicates that it supersedes a prior policy directive with the same number dated October 23, 1977. The Court does not have a copy of this superseded policy directive, apparently in effect at the time of the hearing. Statutory provisions for prisoner disciplinary hearings, Mich.Stat.Ann. § 28.-2320(51) *et seq.*, were enacted in 1979; there was apparently no prior legislation on the topic.

call witnesses and present documentary evidence in his defense when to do so would not be unduly hazardous to institutional safety or correctional goals, and (iii) provide a written statement of the hearing officer as to the evidence relied upon and the reasons for the disciplinary action taken. However, because of the special administrative and security problems faced by prison officials, such other traditional due process rights as the right to confront adverse witnesses and the right to counsel were not mandated. The Supreme Court discussed at length the balance of interests involved in the right to call witnesses:

"Ordinarily, the right to present evidence is basic to a fair hearing; but the unrestricted right to call witnesses from the prison population carries obvious potential for disruption and for interference with the swift punishment that in individual cases may be essential to carrying out the correctional program of the institution. We should not be too ready to exercise oversight and put aside the judgment of prison administrators. It may be that an individual threatened with serious sanctions would normally be entitled to present witnesses and relevant documentary evidence; but here we must balance the inmate's interest in avoiding loss of good time against the needs of the prison, and some amount of flexibility and accommodation is required. Prison officials must have the necessary discretion to keep the hearing within reasonable limits and to refuse to call witnesses that may create a risk of reprisal or undermine authority, as well as to limit access to other inmates to collect statements or to compile other documentary evidence. Although we do not prescribe it, it would be useful for the Committee to state its reason for refusing to call a witness, whether it be for irrelevance, lack of necessity, or the hazards presented in individual cases. Any less flexible rule appears untenable as a constitutional matter, at least on the record made in this case. The operation of a correctional institution is at best an extraordinarily difficult undertaking. Many prison officials, on the spot and with the responsibility for the safety of inmates and staff, are reluctant to extend the unqualified right to call witnesses; and in our view, they must have the necessary discretion without being subject to unduly crippling constitutional impediments. There is much play in the joints of the Due Process Clause, and we stop short of imposing a more demanding rule with respect to witnesses and documents."

Id. at 566–567, 94 S.Ct. at 2979–2980.

In Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), the Supreme Court reaffirmed the holding of Wolff that due process does not mandate confrontation and cross-examination in prison disciplinary hearings. The Court of Appeals in Baxter had held that an inmate who is denied the opportunity to confront and cross-examine witnesses must receive written reasons for such denial or the denial would be deemed "prima facie evidence of abuse of discretion." In reversing the Supreme Court said:

"Mandating confrontation and cross-examination, except where prison officials can justify their denial on one or more grounds that appeal to judges, effectively preempts the area that Wolff left to the sound discretion of prison officials."

Id. at 322, 96 S.Ct. at 1559. The Supreme Court noted that while Wolff had "characterized as 'useful', but did not require, written reasons for denying inmates the limited right to call witnesses in their defense," no such suggestion had been made with respect to confrontation and cross-examination. Id.

## B.

### 1.

 Although Wolff and Baxter mandate considerable judicial deference to the discretion of prison officials, denial of a prisoner's request to call witnesses is nonetheless subject to limited judicial review. Hayes v. Walker, 555 F.2d 625, 630 (7th Cir.), cert. denied, 434 U.S. 959, 98 S.Ct. 491, 54 L.Ed.2d 320 (1977) (Hayes I); Hurney v.

*Carver*, 602 F.2d 993, 995 (1st Cir. 1979). To survive a Fed.R.Civ.P. 12(b)(6) motion, a claim for relief must allege that prison officials denied the request for reasons not having to do with institutional security or correctional goals and thus abused their discretion. *Thomas v. Estelle*, 603 F.2d 488, 490 (5th Cir. 1979). Such allegations should not be merely conclusory, but should be backed with supporting facts, such as identification of the witnesses requested and the reasons, if any, given for denial. *Hurney, supra.*

### 2.

██ The complaint in this case contains the necessary conclusory allegations as described above but lacks supporting facts, such as identification of the particular witnesses requested and denied. Although *Hurney* and *Thomas* provide authority for dismissal because of this lack of factual allegations, the Court is mindful that plaintiff would be without the assistance of counsel in drafting yet another amended complaint to fill this deficiency. However, sufficient facts can be gleaned from the administrative record appended to defendants' motion to overcome this pleading deficiency; the misconduct report, for example, indicates that plaintiff requested two witnesses and states their names. Dx A. Courts should be slow to dismiss complaints brought by *pro per* prisoners before giving them the opportunity to present evidence unless it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 (1972).

### 3.

Defendants' motion neither denies the allegation they refused to permit plaintiff to call witnesses who posed no threat to institutional security nor provides any reasons for such denial. Instead their position rests entirely on their claimed discretion to deny a request for witnesses. Prison officials have no such absolute, unreviewable discretion. "Due process does not permit the automatic exclusion of the right to call witnesses." *Hayes I*, 555 F.2d at 629. In *Hayes I* the inmate requested that ten fellow inmates be called as witnesses; the hearing committee denied the request with the explanation that to call the inmates would place them "in highly compromising positions . . . and could prove hazardous to both witnesses and institutional security." *Id.* at 628–29. The Court of Appeals found the explanation inadequate:

> "If we were to allow broad unsupported findings as were offered in the present case to support the Institutional Adjustment Committee's decision, a prisoner's limited right to call witnesses could be arbitrarily denied in any case and thereby be rendered meaningless. This court would be unable to exercise even limited review of such broad findings. Thus, if a proposed witness is not to be called, support for that decision should be reflected in the record. Prison officials should look at each proposed witness and determine whether or not he should be allowed to testify."

*Id.* at 630.

At trial on remand in *Hayes* the District Court took testimony from the prison hearing officers as to why they denied the plaintiff's request and finding their *post hoc* explanation acceptable, entered judgment for defendants. The Court of Appeals held the District Court erred in considering the subsequent testimony in reviewing the decision to deny; only support in the administrative record itself for the decision could have justified judgment for the officials on this issue.

> "The requirement of support in the administrative record is central to the effectiveness of judicial review in insuring that a prisoner has not been subjected to arbitrary action by prison officials. If subsequent testimony is allowed to substitute for support in the record, the Court can no longer assure itself that the Committee made a reasoned, well-founded decision. Such post-hoc rationalizations are to be viewed with suspicion, and are *not* a proper basis for meaningful judicial review."

*Hayes v. Thompson*, 637 F.2d 483, 488 (7th Cir. 1980) (*Hayes II*). The Court of Appeals emphasized that by requiring support in the record it was not requiring a written statement of reasons for the denial of witnesses, in response to the language of *Wolff* and *Baxter* that written reasons are "useful" but not required. "We only decide that due process requires that there be some support in the record to justify the Committee's denial of a prisoner's request for witnesses." *Id.* at 488 n.4.

The record in this case discloses:

1. According to the misconduct report, Dx A, plaintiff requested two witnesses, Dr. Huff and Nurse Haynor.

2. The misconduct hearing report, Dx B, indicates that the decision was based on the written misconduct report and the staff investigator's report; there is no indication that live testimony was taken from anyone other than plaintiff. Defendants do not deny the allegation that no witnesses were called.

3. Nowhere in the record does any explanation appear for the failure to call Dr. Huff and Nurse Haynor; no evidence appears from which an inference could be drawn that calling them as witnesses would create a hazard to institutional safety.

Accordingly, defendants' motion for summary judgment as to the failure to call witnesses is denied; indeed under the standards of *Hayes I* and *II* plaintiff is entitled to summary judgment on this record.[5]

### C.

### 1.

Defendants could argue, although they have not done so, that plaintiff's limited right to call witnesses was satisfied because the staff investigator procured "witness statements" from Dr. Huff and Nurse Haynor which were apparently available to the hearing officer, defendant Christiansen. Dx D. Current administrative rules of the Michigan Department of Corrections effective as of November 30, 1977 (one month after plaintiff's hearing took place), provide that while a prisoner has the right to call necessary, relevant and material witnesses, when to do so is not unduly hazardous to institutional or safety goals,

"[t]he presence of a witness is not necessary ... if the witness is able to provide the hearing officer or investigator with a complete written statement."[6]

A blanket rule precluding live testimony in favor of written statements, however, would appear to violate due process. In *Bartholomew v. Watson*, 665 F.2d 915 (9th Cir. 1982), the Court of Appeals reviewed a prison rule that prohibited the calling of inmates or prison staff as live witnesses as per se hazardous to institutional safety but permitted the charged inmate to submit questions to the disciplinary committee to be posed to any potential witness. The committee had discretion whether to allow the inmate access to the answers, except that access was prohibited where the answers came from another inmate. The Court of Appeals held:

"The rules as drafted deny to all inmates the right to present material testimony without proof of any facts establishing a threat to institutional safety. We agree with the district court that such a restriction violates the suggestion of the Supreme Court in *Wolff* that the decision to preclude the calling of a witness should be made on a case-by-case analysis of the potential hazards which may flow from the calling of a particular person.

The right to call witnesses is basic to a fair hearing. A blanket proscription against the calling of certain types of

---

**5.** Judge Stewart Newblatt of this District has held that *Wolff* requires that inmates be permitted to call witnesses and produce documentary evidence unless "under an objective test" it would be unreasonably dangerous to institutional safety. *Walker v. Johnson*, 544 F.Supp. 345 at 354, 358, 366 (E.D.Mich. 1982). Such an objective test further emphasizes the need for an administrative record supporting the denial.

**6.** R. 791.3315(4). *See* note 4, *supra*, for text of full rule.

witnesses in all cases involving institutional security is an overreaction which violates minimal due process."

*Id.* at 918.

A similar rule was voided in *Powell v. Ward,* 487 F.Supp. 917 (S.D.N.Y.1980), aff'd, 643 F.2d 924 (2nd Cir. 1981), *cert. denied,* 454 U.S. 832, 102 S.Ct. 131, 70 L.Ed.2d 111 (1981). Inmates were not permitted to call witnesses to testify in their presence at a hearing. Instead inmates could request the hearing officer to interview witnesses outside their presence. Although the interviews were generally tape recorded, inmates were not permitted to hear the tape nor were the interview recordings incorporated into the record of the hearing. The District Court concluded that this blanket prohibition against permitting inmates to call witnesses to testify in their presence at the hearing was contrary to *Wolff* and issued an order which read in part:

> "witnesses must be allowed to be present at disciplinary proceedings, unless the appropriate officials determine that this would jeopardize institutional safety or correctional goals. If an inmate is not permitted to have witnesses present, the interview may be conducted out of her presence and tape recorded. The tape or transcript of the interview, which is to be considered part of the record of the hearing, is to be made available to the inmate prior to or at the hearing, unless prison officials determine that this too would jeopardize institutional safety or correctional goals."

487 F.Supp. at 929. *See also Ward v. Johnson,* 667 F.2d 1126 (4th Cir. 1981) (prisoner's due process rights violated by prison officials' refusal to call three inmate witnesses for live testimony at the hearing; written statements from these inmates were inadequate particularly in light of new theory of misconduct presented at hearing to which prior prepared statements could not be responsive). *Cf. Devaney v. Hall,* 509 F.Supp.

497 (D.Mass.1981) (across the board policy of permitting only written statements in *particular* high security prison block did not violate due process where inmates had adequate opportunities to obtain written statements from witnesses in that block and in the general prison population prior to the hearing).

2.

■ Many of the concerns that led to the conclusions in *Bartholomew* and *Ward v. Powell* appear to be present in this case. The "witness statements" from Dr. Huff and Nurse Haynor were obtained not by plaintiff, who was in administrative segregation, but by the staff investigator. Plaintiff has alleged, and defendants have not denied, that he was refused access to the investigator's report containing these statements. Further, it appears that neither Huff nor Haynor fully understood why plaintiff had sought their testimony since both refer to their statements as a "character reference". It appears that Huff at least had some relevant information but the nature of this information was not clearly disclosed.

> "As far as the present episode; according to my information, Mr. King has definitely been involved in the situation that has caused considerable disturbance in Health Services personnel. Prior to this present episode, I have no actual proof of any misdeeds on the part of Mr. King." [7]

It is uncertain whether "the situation" referred to is the receipt of contraband or the accusation of sexual impropriety against Nurse Lampley. If, as seems likely, Huff was referring to the latter, live testimony at which plaintiff could have directed questions to Huff might have bolstered plaintiff's theory of a "set-up". Substitution of these cursory "character references" obtained by the staff investigator and not even available to plaintiff at his hearing did not

---

7. Memorandum to Hearing Officer from R. G. Huff, D.O., Medical Director, dated October 27, 1977. Dx D.

satisfy plaintiff's constitutionally guaranteed, albeit limited, right to call witnesses.[8]

### D.

■ *Wolff* also held that prisoners have the same right to present documentary evidence as to call witnesses at disciplinary hearings. 418 U.S. at 566, 94 S.Ct. at 2979. However, the factual barrenness of plaintiff's allegation that he was not permitted to compel disclosure of relevant departmental documents is, unlike the allegation regarding witnesses, not cured by the administrative record. The misconduct report does not indicate whether plaintiff requested any documents, nor is it possible to infer what documents, apart from the misconduct report (which plaintiff was given) and the staff investigator's report, would have been relevant.

Unfortunately, defendants' motion does not disclose that (i) plaintiff failed to request documents, (ii) if he did make a request, that all relevant documents were given him, or (iii) if relevant documents were withheld, the denial was for valid reasons of institutional safety. Instead, defendants once again, incorrectly, assert an absolute unreviewable discretion to deny relevant documents. *Wolff* only gives prison administrators the "necessary discretion" to limit a prisoner's right to compile statements and other documentary evidence in order to keep the hearing "within reasonable limits" and protect institutional safety and correctional goals from *undue* hazard. 418 U.S. at 566, 94 S.Ct. at 2979.

■ Defendants argue in the alternative that all relevant documents, with the exception of two "confidential" witness statements, have now been released to plaintiff through the instant litigation. Obviously access to relevant documents now does not cure denial at the time of the hearing when they would have been useful to plaintiff. Judicial review of whether due process was observed in prison disciplinary hearings is confined to the administrative record. *Hayes II*, 637 F.2d at 488.

Neither party having provided the Court with sufficient facts to determine whether plaintiff's limited right to documentary evidence was violated, defendants' motion on this issue is denied without prejudice.

### E.

■ Defendants' motion seems to misunderstand the nature of plaintiff's complaint regarding the staff investigator's report. Defendants argue plaintiff has no constitutional right to a staff investigator. However, plaintiff's complaint is that a staff investigation having been made, and the report submitted to the hearing officer, *he* was not able to see and use the report and the witness statements contained within it. To the extent that this denial affected plaintiff's right to call witnesses and present documentary evidence, the denial is subsumed in the allegations discussed above.[9]

---

**8.** *Wolff* required that prior written notice of the charges be given to enable the inmate "to marshall the facts and prepare a defense". 418 U.S. at 564, 94 S.Ct. at 2978. This opportunity is of little value if the process of marshalling the facts is controlled by the prison staff investigator and the inmate is denied access to the product of the investigation.

**9.** The current departmental rule states:

"(3) A resident has the following rights at a formal hearing:

. . . . .

(d) To require the report of a staff investigator who interviewed and obtained statements from relevant witnesses, secured departmental documents subject to disclosure, and gathered other evidence.

(4) . . . Failure of a staff investigator to present requested documents or statements is justifiable where to do so would be unduly hazardous to institutional or safety goals or where the information is irrelevant or unnecessary to the particular case. The specific reason for such failure shall be placed in the record."

3 Mich.Ad.Code R. 791.3315(3), (4) (1979). Assuming the same or similar rules were in place at the time of the hearing, defendants' violation of their own rules might give rise to a negligence claim but does not state a constitutional violation. *Bills v. Henderson*, 631 F.2d 1287 (6th Cir. 1980). However, existence of these rules might be relevant to the question of qualified immunity based on good faith, *see* note 10 *infra*.

▮▮ The use of the staff investigator's report, though, may impact on another due process right as well. *Wolff* held that due process requires "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action." 418 U.S. at 564, 94 S.Ct. at 2978. In *Hayes I* the "written statement of reasons" given plaintiff consisted of:

"Based on our review of the violation report and the report by the special investigator it is our motion that we find Mr. Hayes guilty as charged."

Such simple adoption of the misconduct report and the investigator's report did not satisfy *Wolff*. 555 F.2d at 631. The written statement of the hearing officer must at a minimum set forth the essential facts upon which the conclusion was reached in order to ensure that prison officials have acted fairly, protect the charged prisoner from the collateral effects of the decision, and enable the prisoner to "propound his own cause" subsequent to the hearing. *Id.* at 631–33.

The hearing report was not as barren as that in *Hayes*; it did indicate these essential facts: (i) plaintiff gave the poster to Goldsmith to hold on Monday, (ii) Goldsmith gave the poster to Prince on Tuesday to return to plaintiff, and (iii) plaintiff was "waiting inside the door" of the Health Services Unit when Prince gave him the poster. Dx B. However, the basis for finding these facts was simply given as "the written report". The hearing report fails to indicate that the investigator's report contained statements from ten persons, some of which tended to corroborate plaintiff's theory of hostility between him and Nurse Lampley. Also, it is not clear from the report what evidence led the hearing officer to conclude that plaintiff was "waiting" for the poster, which he claimed he never saw before, the critical factual finding for his appeal since defendant Wells denied the appeal because plaintiff was "waiting for the poster", making his "no-

tion of a 'set up' ... [un]likely under the circumstances". Dx C. Plaintiff's ability to argue his appeal (and to subsequently frame the complaint in this case) was seriously hampered by his lack of access to the investigator's report, upon which the hearing decision was based.

In *Chavis v. Rowe*, 643 F.2d 1281, 1284–89 (7th Cir. 1981), *cert. denied*, —— U.S. ——, 102 S.Ct. 415, 70 L.Ed.2d 225 (1981), a hearing report which simply stated "We recognize and consider the resident's statement, however, we accept the reporting officer's charges", was held to be inadequate under *Wolff*. The statement, the Court of Appeals said, should have set forth the evidence relied on by the reporting officer, disclosed exculpatory evidence contained within the investigatory report, and explained why the officer's charges were believed rather than the exculpatory evidence in the investigatory report.

▮ Upon the record now before the Court, and in light of *Hayes I* and *Chavis*, the Court concludes that failure to give plaintiff access to the investigator's report where the hearing decision effectively incorporated the report with little explanation violated plaintiff's due process rights.

## IV.

▮ The final ground offered by defendants in support of their motion is the defense of qualified immunity. However, the burden of pleading qualified immunity is on defendants, since the necessary facts are peculiarly within their knowledge. *Gomez v. Toledo*, 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980). Defendants have set forth no facts but only state in a conclusory way "it is at once clear the conduct of defendants Wells and Christiansen was at all times justified by an objectively reasonable belief that their conduct was lawful". This is an inadequate basis for summary judgment on this issue.[10]

10. In *Harlow v. Fitzgerald*, —— U.S. ——, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), the Supreme Court clarified the elements of the qualified immunity defense for government officials performing discretionary functions. Officials are generally shielded from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of

## V.

Summary judgment may be awarded to a non-moving party where it appears from the papers, affidavits and other proofs that there are no disputed issues of fact and that judgment for the non-moving party would be appropriate as a matter of law. *Lowenschuss v. Kane,* 520 F.2d 255, 261 (2nd Cir. 1975); *see generally,* C. Wright and A. Miller, *Federal Practice & Procedure,* Civil § 2720.

Accordingly, for the reasons stated herein, defendants shall have 20 days from entry of this opinion and order to supplement the record or else partial summary judgment shall issue in favor of plaintiff as to liability on the denial of his right to call witnesses and to have a written statement by the hearing officer as to the evidence and reasons relied on for the disciplinary decision, subject to the defense of qualified immunity. Defendants' motion for summary judgment on the denial of the right to compel relevant departmental documents is denied without prejudice. Defendants' motion for summary judgment on the basis of qualified immunity is also denied without prejudice.

SO ORDERED.

which a reasonable person would have known." *Id.* at ——, 102 S.Ct. at 2738. If the law was clearly established at the time the action occurred, the immunity defense will ordinarily fail, "since a reasonably competent public official should know the law governing his conduct." *Id.* However, the defense may yet be sustained if the official both shows "extraordinary circumstances" and "that he neither knew nor should have known of the relevant legal standard." *Id.* The Supreme Court's overriding concern in articulating these elements was to establish an objective standard for measuring qualified immunity so that the issue could be determined more readily on summary judgment, thus protecting government officials from exhaustive discovery and the risk of trial where only bare allegations of "malice" are made to counter the qualified immunity defense.

Thus, under *Harlow,* defendants' motion should address (i) whether the constitutional law regarding their obligations to respond to plaintiff's request for witnesses and to provide an adequate statement of facts and reasons supporting the hearing decision was clearly established as of October 28, 1977, (ii) whether a reasonable person in defendants' positions would have known of these legal obligations, and (iii) whether, if defendants in fact were unaware of their legal obligations, extraordinary circumstances justify their lack of knowledge. Of particular significance will be the rules or internal policy guidelines in place at the time of the hearing, since prison officials are charged with knowledge of their own regulations. *Chavis,* 643 F.2d at 1289.