David A. CLARK, Plaintiff,

v.

MICHIGAN DEPARTMENT OF CORRECTIONS, et al., Defendants.

No. 82–40018.

United States District Court,
E.D. Michigan, S.D.

Nov. 3, 1982.

David A. Clark, in pro. per.

Brian MacKenzie, Asst. Atty. Gen., Lansing, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER

NEWBLATT, District Judge.

## I FACTS

This is a pro. per. 42 U.S.C. § 1983 action brought by plaintiff David Clark an inmate of the State Prison of Southern Michigan (SPSM). The defendants in this action are: the Michigan Department of Corrections; Barry Mintzes, former warden of SPSM; Pamela K. Withrow, assistant deputy warden at SPSM; William Malone, a resident unit manager at SPSM; and Robert Carrol, a guard at SPSM.

On October 1, 1981, plaintiff was charged with fighting—a major misconduct offense. Plaintiff was placed in administrative segregation pending a hearing on the fighting charge. On October 6, 1981, however, an administrative hearing officer acquitted plaintiff of the fighting charge. In spite of the acquittal, plaintiff was forced to remain in administrative segregation until October 16, 1982. Following his release from administrative segregation, plaintiff alleges that he was deprived of the opportunity to attend classes and utilize the law library. Plaintiff contends that the major misconduct assignment from October 6, 1981 to October 16, 1982 resulted from an intentional and malicious denial of the procedural component of the due process clause of the Fourteenth Amendment. Plaintiff also contends that the fact of administrative

segregation violates the Eighth Amendment and that the post administrative segregation denial of the opportunity to attend classes also was violative of the Eighth Amendment. Finally, plaintiff contends that the denial of law library facilities is violative of the equal protection clause of the Fourteenth Amendment.

Defendants' statement of facts in this case is nearly incoherent.[1] Defendants first tell the Court that plaintiff had erroneously been placed in general population prior to the fight. Defendants then indicate that the administrative segregation assignment following the fight resulted from defendants' desire to correct the original mistake. Finally, defendants assert that plaintiff was removed from administrative segregation on October 16, 1981 in order to rectify the "original administrative error."[2] What happened to the notion that plaintiff should have been in administrative segregation in the first place?

There are three pending motions in this case. Defendants have filed a motion to dismiss. Since such a motion assumes the truth of plaintiff's allegations, the inconsistency of defendants' actual account is not a barrier to the prosecution of the motion. Plaintiff has filed a motion to produce documents. In addition, on April 19, 1982, plaintiff filed a paper with the Court indicating that he had been deprived of his legal materials in retaliation for filing this lawsuit.[3] The Court will interpret this motion as an application for leave to amend and thus add a claim based on retaliation for invoking the judicial process in violation of the right to judicial access guaranteed by the equal protection clause.

1. *See* pp. 1–2 of brief at docket entry # 18.

2. *See id.* at p. 2.

3. *See* docket entry # 21. In the complaint plaintiff seeks injunctive relief in addition to compensatory and punitive damages. Obviously, this injunctive relief is moot with respect to the October 5, 1981 to October 16, 1981 administrative segregation. Liberally construing this pro. per. case, the Court views the injunctive relief issue as still alive with respect to plaintiff's legal materials and access to law

## II LEGAL ANALYSIS

### A. Defendant's Motion to Dismiss

#### 1. Section 1983, 42 U.S.C. Respondeat Superior Issue

■ Although throughout the complaint plaintiff alleges that defendants Withrow, Malone and Carrol were the active participants in the denial of plaintiff's constitutional rights, plaintiff has also named the then Warden Mintzes and the State Department of Corrections as defendants. The only way by which the latter two defendants could be held liable is upon an application of respondeat superior. This doctrine has, however, been explicitly rejected by the Sixth Circuit in the recent case of *Hayes v. Jefferson County.*[4] In light of *Hayes,* the Court will not belabor the point. Defendants' motion to dismiss is hereby GRANTED with respect to defendants Mintzes and Michigan Department of Corrections.

#### 2. Eleventh Amendment Immunity Issue

■ Defendants next contend that the Eleventh Amendment provides an immunity with respect to all damage claims asserted in this case. The Court agrees that the Eleventh Amendment—as interpreted by the Supreme Court in *Edelman v. Jordan*[5] —blocks money recoveries extracted from a state treasury. Here, however, defendants Withrow, Malone and Carrol have been sued in three individual capacities. Plaintiff thus seeks to recover from the individual assets of the defendants.

In *Scheuer v. Rhodes,*[6] the Supreme Court clearly indicated that 42 U.S.C.

library facilities. Plaintiff seeks a court order requiring defendants to return his legal materials and allow him to utilize the law library.

4. 668 F.2d 869 (CA 6, 1982).

5. 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

6. 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).

§ 1983 plaintiffs can recover against the individual assets of state officials.[7] *Scheuer* forecloses defendants' Eleventh Amendment theory. Thus, this Court finds that the Eleventh Amendment is not a bar to the damage claims asserted by plaintiff. Next to be considered is the motion to dismiss in the context of the individual claims asserted by plaintiff. The first such claim is that plaintiff's rights under the procedural component of the due process clause have been violated.

### 3. Procedural Due Process Claim

The instant case presents an individualized procedural due process claim. Consequently, the Court must consider the applicability of the seminal Supreme Court case of *Parratt v. Taylor.*[8]

In *Parratt,* the Court—speaking through Justice Rehnquist—held that the negligent deprivation of an inmate's property did not raise a procedural due process claim. Due process was satisfied for the reason that the plaintiff had an adequate available state tort remedy. In other words, the Court held that the state had complied with the due process clause by affording plaintiff a remedy that could be pursued in a common law conversion or negligence action.[9]

In applying a *Parratt* to the instant case, it is important to draw the relevant distinctions between the claims advanced by Robert Parratt and the claims advanced by plaintiff Clark. It must then be determined whether the distinctions are sufficiently significant to remove this case from the precedential control of *Parratt.*

Before engaging in this analysis, one is obliged to briefly note the additional recent Supreme Court case of *Patsy v. Board of Regents,* —— U.S. ——, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982). In *Patsy,* the Court squarely rejected the theory that section 1983 contains an exhaustion of state remedies requirement. After carefully examining the legislative history of section 1983, the Court concluded that the 1871 drafters—motivated by the desire to protect the recently freed blacks from the Ku Klux Klan dominated state judiciary—sought to afford a federal court forum for the litigation of constitutional violations. Again and again, the *Patsy* Court emphasized that the statutory objective of redressing federal constitutional violations cannot be eviscerated by a state exhaustion requirement.[10]

■ *Patsy* is significant in the section 1983 universe. *Patsy* is an analysis of the Fourteenth Amendment due process clause rather than a limiting interpretation of section 1983. In order to invoke *Parratt,* a federal judge must make certain that the

---

7. *See also Shirley v. Chagrin Falls Schools,* 11 FEP 542 (N.D.Ohio, 1974); *Curren v. Portland Superintending School Committee,* 15 FEP 644 (D.C.Mich.1977).

8. 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

9. *See id.* at 537–543, 101 S.Ct. at 1913–1917.

10. *See Patsy v. Board of Regents,* —— U.S. ——, ——, ——, 102 S.Ct. 2557, 2562, 2563, 73 L.Ed.2d 172 (1982). Justice Marshall, speaking for the majority, asserted: "The 1871 Congress intended § 1 [§ 1983] to 'throw open the doors of the United States courts' to individuals who were threatened with, or who had suffered the deprivations of constitutional rights . . . and to provide these individuals immediate access to the federal courts notwithstanding any provisions of state laws to the contrary." *Id.* at ——, 102 S.Ct. at 2562.

At another point in the *Patsy* opinion, Justice Marshall declared: "A third feature of the debates relevant to the exhaustion question is the fact that many legislators interpreted the bill to provide dual or concurrent forums in the state and federal system, enabling the plaintiff to choose the forum in which to seek relief." *Id.* at ——, 102 S.Ct. at 2563.

It must be remembered that *Patsy* was decided *after Parratt.* Clearly, the latter decision was a warning against overenthusiastic application of the de facto *Parratt* exhaustion mechanism. Professor Kenneth Culp Davis discussed the implications of *Parratt* prior to the *Patsy* decision. Professor Davis pointed out that *Parratt* could be applied to reduce the volume of section 1983 federal court actions by an amount exceeding 90%. Professor Davis emphasized, however, that the federal judiciary need not necessarily interpret *Parratt* in such a broad manner. *See* Davis, *Administrative Law Treatise,* 1982 Supplement, § 26.14. The *Patsy* decision is suggestive of a narrow orientation toward *Parratt.*

state indeed affords the section 1983 plaintiff an adequate state tort remedy. There is no presumption that section 1983 plaintiffs should be shepherded to state court.

The court thus moves to an analysis of *Parratt* as applied to the instant case. As was mentioned earlier, the Court must examine the distinctions between the two cases.

■ In this respect the Court notes that plaintiff Clark has been deprived of liberty [11] while plaintiff *Parratt* was deprived of property. This distinction is, however, not significant. The inquiry of the *Parratt* Court was whether an adequate state remedy is tantamount to "due process." The affirmative answer rendered in *Parratt* clearly must apply to life and liberty as well as property deprivations. Thus, while the liberty/property distinction is an issue, it is not enough to be a barrier to the application of *Parratt*.

Next, the Court considers that *Parratt* involved a negligent act by state officials while the instant case involves an intentional act. In *Toins v. Ignash*,[12] this Court held that *Parratt* is inapplicable to intentional deprivations of property where the state is acting pursuant to an established policy and practice. Indeed, were this not true, *Parratt* would have been an issue as to the procedural due process claims asserted in the massive *Walker v. Johnson*[13] class action recently tried and decided by this Court.

Here, however, the intentional deprivation of liberty was not carried out pursuant to established policy and custom. Instead, defendants—at least defendants Withrow, Malone and Carrol—committed a discrete individualized act against plaintiff. Thus, the established policy *Parratt* exception is not applicable, and the Court is left with nothing more than the fact that *Parratt*

applied to a different general category of culpable civil behavior. Again, the Court must find that the distinction in question cannot operate as an exception to *Parratt*.

■ Thus, the Court finds that an intentional deprivation of liberty falls within *Parratt*. It follows that defendants can apply *Parratt* to plaintiff's procedural due process claim *provided that the state affords plaintiff an adequate state remedy.* The Court must now focus on this last *Parratt* issue.

■ Before doing so, the Court briefly notes that defendants cannot claim protection from state immunity doctrines. Defendants are accused of malicious acts. State common law immunity is thus inapplicable.[14]

This said, the Court is left with the seemingly easy chore of identifying an analogous Michigan tort, and then dismissing plaintiff's procedural due process claims by authority of *Parratt*. The analogous tort in *Parratt* was conversion—with common law negligence an unquestionably applicable substitute. Indeed, it was easy to find an analogous state common law tort in *Parratt*. It may not be so easy in the instant case.

At once, it is clear that it is entirely futile to argue that plaintiff's loss of liberty constitutional tort can be prosecuted to completion in state court. The definition of the term due process as rendered in *Parratt* obviously makes this argument not only elliptical but perfectly circular.

Instead, a recognized intentional tort must be culled from the common law of Michigan. But what tort? The only even arguable tort is false imprisonment. The Court acknowledges that a false imprisonment claim is raised where a plaintiff is

---

**11.** And plaintiff was indeed deprived of a due process liberty interest by the administrative segregation transfer. The liberty interest was triggered for the reasons stated by this Court in *Walker v. Johnson,* 544 F.Supp. 345, 352 (E.D. Mich., 1982). *See also King v. Wells,* 94 F.R.D. 675 (E.D.Mich., 1982).

**12.** 534 F.Supp. 452 (E.D.Mich., 1982).

**13.** *See* fn. 10, *supra.*

**14.** *See generally Lockaby v. Wayne County,* 406 Mich. 65, 276 N.W.2d 1 (1979).

arrested unlawfully.[15] Furthermore, it is not a quantum leap to conclude that false imprisonment lies where a person is imprisoned after being acquitted of a criminal charge. But it *is* a quantum leap to recognize that a duly convicted and incarcerated person "unlawfully" assigned to administrative segregation has suffered a false imprisonment.

The latter certainly has not been recognized by the Michigan judiciary. And since false imprisonment is the only arguable tort, the Court must conclude that, under established Michigan common law, there is not a tort remedy to redress the wrong that plaintiff has suffered.

It would be a crowning irony if at the behest of the state attorney general—perhaps the most ardent foe of federal judicial activism—this Court were to hold that the deprivation of liberty suffered by plaintiff is within the Michigan tort of false imprisonment. It is the responsibility of the Michigan judiciary to decide this issue. For now, however, the Court must conclude that there is not an adequate state remedy in the instant case. Therefore, *Parratt v. Taylor* does not bar plaintiff's procedural due process claim.

### 4. Eighth Amendment Claim

The Court must now consider whether plaintiff's Eighth Amendment claim should be dismissed. Surprisingly enough, the issue of whether administrative segregation *per se* violates the Eighth Amendment was never raised in the *Walker v. Johnson* case.

This argument is not farfetched when it is noted that the Supreme Court devoted a written opinion to the Eighth Amendment constitutionality of housing two inmates in a single cell at the Penitentiary in Lucasville, Ohio.[16] Since administrative segregation is unquestionably more onerous than double celling, the Court finds that plaintiff's Eighth Amendment theory is by no means frivolous.

Nevertheless, the theory must be rejected. Under *Rhodes,* an Eighth Amendment claim is stated where an inmate is made to suffer unnecessary and wanton pain or where a punishment is grossly disproportionate to the crime.[17] While these terms are imprecise,[18] it seems reasonably clear that administrative segregation, *per se,* is not an Eighth Amendment violation. The level of pain is not severe enough to fall within the *Rhodes* guidelines.

Similarly, the Court must reject the claim that the denial of classes following administrative segregation was violative of the Eighth Amendment. This issue was decided in *Walker.* For the reasons stated therein, the Court rejects the claim advanced by plaintiff. *See* 544 F.Supp. 345, 361.

Thus, plaintiff's Eighth Amendment claim must be dismissed from this case. To the extent that defendants' motion to dismiss is aimed at this claim, the motion is GRANTED.

### 5. Equal Protection Clause Claim

Plaintiff has contended that he has been denied access to the law library since

15. *See Rupright v. Muskegon Circuit Judge,* 207 Mich. 385, 174 N.W. 138 (1919).

16. *See Rhodes v. Chapman,* 452 U.S. 337, 101 S.Ct. 2392, 69 L.Ed.2d 59 (1981).

17. *See id.* at 348, 101 S.Ct. at 2399.

18. Although imprecise, the Eighth Amendment obviously contains a core principle forbidding inhumane punishment. The general language of the Amendment invites judicial flexibility. *See* Ely, *Democracy & Distrust: A Theory of Judicial Review,* 14 (1980). The Flexibility, of course, is limited by the nature of the core principle—a principle to which all Eighth Amendment judicial decisions should be traced.

*See generally* Grano, *Judicial Review & A Written Constitution,* 28 Wayne L.Rev. 1, 75 (1981); Grano, *Rhode Island v. Innis, A Need to Reconsider the Constitutional Premise Underlying the Law of Confessions,* 17 American Criminal Law Review 18, (1979).

Another interesting view of the Eighth Amendment is that the Amendment was designed to outlaw particularly severe punishments aimed at classes of people toward which society feels inherently hostile. *See* Ely, *id.* at 96–97. *But see* Grano, *Ely's Theory of Judicial Review: Preserving The Significance of the Political Process,* 42 Ohio State Law Journal 167, 176 (1981).

his release from administrative segregation. In *Walker,* the Court held that, under the *Bounds v. Smith* [19] decision, denial of law library facilities is violative of the equal protection clause.[20] Applying *Walker* to the instant case, plaintiff's law library claim obviously must remain alive. Thus, the motion to dismiss is DENIED as to plaintiff's law library equal protection clause claim.

### B. Plaintiff's motion for production of documents

Plaintiff has moved for production of documents. *See* request at docket entry # 15. Defendants have refused to supply plaintiff with the sought-after documents. This refusal is bottomed on defendants' belief that plaintiff seeks irrelevant materials dealing with law library facilities rather than administrative segregation. *See* docket entry # 24.

 Defendants have failed to note that one of plaintiff's claims deals with denial of law library privileges *subsequent* to release from administrative segregation.[21] Accordingly, plaintiff's requests for documents concerning law library privileges are relevant requests and thus under Rule 34 of the Federal Rules of Civil Procedures, plaintiff is entitled to production of the said documents. Accordingly, the Court hereby GRANTS plaintiff's motion for production of documents. Defendants are thus ORDERED to allow plaintiff to gather the materials requested by plaintiff and allow plaintiff to examine the said materials under circumstances reasonably calculated to afford plaintiff an adequate time to conduct the said examination. Defendants must take affirmative steps toward the said production of documents within thirty (30) days from the date of this Order.

### C. Plaintiff's Motion to Amend

 Plaintiff has filed a paper which the Court will construe as a motion to amend. Therein, plaintiff alleges that, in retaliation against plaintiff for filing this lawsuit, defendants have curtailed plaintiff's ability to prosecute the instant case, and thus have abridged plaintiff's equal protection clause right to judicial access.

As Professor Wright has noted,[22] Rule 15 of the Federal Rules of Civil Procedure affords liberal opportunities for amending complaints. Absent prejudice to defendants, leave to amend should be granted.

The present action, filed in 1982, has not progressed to the point where defendants will suffer prejudice as a result of defending against plaintiff's retaliation claim. Clearly, this amendment shall be allowed under Rule 15. Accordingly, plaintiff's motion for leave to amend is GRANTED.

## III CONCLUSION AND ORDER

For the reasons set out in the foregoing opinion, the Court hereby renders the following rulings: Defendants' motion to dismiss is hereby GRANTED as to defendants Mintzes and Michigan Department of Corrections. The said two defendants are thus dismissed from this case.

Defendants' motion to dismiss is hereby DENIED as to defendants Withrow, Malone and Carrol except to the extent that the said motion is addressed to the Eighth Amendment claim advanced by plaintiff. Defendants' motion to dismiss is GRANTED as to the Eighth Amendment claim, and the said claim is thus dismissed from this case.

Plaintiff's motion for production of documents is GRANTED. Defendants are thus ORDERED to produce the sought-after documents within thirty (30) days under the terms described in Part II–B of this opinion.

Plaintiff's motion for leave to amend the complaint is GRANTED. The retaliation

---

**19.** 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977).

**20.** *See* 544 F.Supp. 345, 361.

**21.** *See* complaint at docket entry # 3 at ¶¶ 25, 26, 30–D.

**22.** *See* Wright & Miller, *Federal Practice & Procedure,* § 1487.

claim described in docket entry # 21 is henceforth to be regarded as an additional claim for recovery.